Mr. Hall, you may proceed. Good morning, Your Honor, and may it please the court. More than 30 years ago, the Supreme Court held in Brouwer that a violation of the Fourth Amendment requires an intentional acquisition of physical control. For there to be a seizure, there needs to be a governmental termination of freedom of movement through means intentionally applied. With that framework, it was of no surprise that the Supreme Court in Plumhoff held that an officer shooting into a vehicle and killing the driver of the vehicle was subject to Fourth Amendment scrutiny. Could I ask you, Mr. Hall, is it your concept of this case, because there seems to be a difference between the way Judge Stadmuller saw it and the way you're portraying it. Do you think that Mr. Ortiz was aiming for any person or was he just trying to stop the vehicle? Because you could try to stop a vehicle by shooting the tires out, for example. I mean, so I want to know what it is he was trying to seize, a person or the vehicle. According to the deposition of Mr. Ortiz and his intent, which only really he knows, he was focused on the driver. He was focused on the driver's hands on the steering wheel. Well, so if he's trying to stop the vehicle, I mean, that might be a reason to focus on hands on the steering wheel. Then isn't everybody inside the vehicle automatically included? No, Your Honor. I mean, there could have been someone in the back seat, too. I mean, indeed. So our position is that the Fourth Amendment requires an intent to cause the harm, the deprivation to the individual. Ortiz wasn't aware of whether there was any passengers in the vehicle to begin with. He never saw Davis. He never saw the passenger in the back seat. Well, but you see the distinction I'm trying to draw, though, because if what he's trying to do, suppose he had aimed at the tires, would you say that that meant he wasn't trying to seize either the driver or any passengers? He's trying to get the car to stop so that it doesn't either get away or potentially injure anyone or other good reasons for trying to stop the car. Sure. I mean, I think that's an attempted seizure at that point of the vehicle. And so we have the case of all the people who were herded into the room and the pepper spray and the ones in the room, 36 or so folks in the room are all collectively seized, just like the two people in the car are collectively seized. But Your Honor, so that's the Duran case, which the district court relied on. First of all, I'd note that that's an unpublished decision. And so the district court denied qualified immunity based on a single decision that was unpublished by this court. Second of all, I'd point out in Duran, this court ruled that the partygoers who were herded into the house were already seized. They weren't seized as a product of the use of the pepper spray. There was a seizure by show of authority when those folks complied and went into the house. That is where the seizure occurred, which is distinct from this case, because in this case, the plaintiff's position would be that a seizure occurs at the time of the use of force, at the time of the shooting, which would be consistent with if the court ruled in Duran that the seizure occurred with the pepper spray. But that's not what happened. So another thing that the district court brings out is that the sequence may not be as clear as you portray it to be. You know, like when does the shooting happen? When's the car moving? When are tires squealing? And obviously, as you correctly say in your brief, we've got to, you know, we're not here to resolve factual issues. So if there are critical factual issues, we have to let the case go forward and decline jurisdiction at this point. Sure, and I appreciate your honor bringing that up. Two points. First of all, for our argument based on Plumhoff and our argument based on the Torres case, which is pending in the Supreme Court, neither of those arguments are the purported factual disputes. OK, the Plumhoff decision, what we're really focused on is, is Davis the intended target? And it is undisputed he's not the intended target. With the Torres case, it's undisputed that this vehicle didn't stop after the shooting. This vehicle engaged in a high speed chase. And it wasn't until 20 miles down the road that officers were first able to lay hands on Davis. So to that point, I think first and foremost, those factual issues go to the reasonableness, which we'd evaluate under the Fourth Amendment if the Fourth Amendment applied. As to the purported dispute of fact, there's a couple of points. First, the dispute really lies in the court. The trial court used the term rapidly accelerate and accelerate somewhat interchangeably and perhaps not clearly. However, what the issue is, is the plaintiff is relying on the deposition testimony of Hackett, who is one of the officers who's there, but he's next door. He's at he's at the fire station, so he can't see anything. He hears the gunshots and he hears tires squealing. He puts the order of events as gunshots first and then tires squealing, which giving the is that's what we need to do here. However, that is not the same as to say that the vehicle was not moving at the time of the shots being fired. But if it was moving, you know, one mile an hour, I'm looking. Ortiz fired his weapon as soon as he drew it, he fires four shots within the span of a second, and only then, I mean, if the vehicle is just like creeping back to get into position to maybe leave or whatever. Isn't that some isn't that an important factor in terms of what in terms of the evaluation of Ortiz's actions? If we are applying the Fourth Amendment, I will concede that these facts are important. They go to the reasonableness of the use of force. However, again, the issue, the legal issues that are before the court regarding Plumhoff and regarding Torres, these facts are of no consequence. But but to drive this point home, Your Honor, first of all, the plaintiff's own expert has this vehicle going somewhere between 30 and 40 miles an hour at the time of the first shot. You just agreed that we can't get into that. So I mean, it's I understand. But Your Honor, there's a distinction between the the vehicle accelerating versus the vehicle not moving. Mr. Hollins, go ahead. Finish your thought. I got a question for you. Finish your thought. Thank you, Judge. The point being is that the driver of the vehicle, the passenger that's in the back seat that both survived, both testified the vehicle is moving at the time of the first shot. The question is, was it rapidly accelerating? Had the tires squealed? That is a dispute, a fact that we have to decide in favor of the plaintiff. But there is no version of facts that have this vehicle at a complete standstill at the time the shots are fired. Thank you, Judge Scudder. Yeah, of course. Here's my question for you. I want I want to make sure that I understand your your main point here. What you're saying is go ahead, go ahead and exercise jurisdiction here because I'm not reliant. My qualified immunity argument does not rely upon disputed facts, but rather what my client faced was a car that was approaching him at a speed, at least at a precise level. We don't know. But a car that was driving at him trying to leave this particular parking lot. And it was reasonable under the circumstances for him to deploy lethal force in those circumstances because a car can be a deadly weapon. It was coming at him. And as you acknowledge, you know, as you say, you know, he was he was shooting through the windshield at the driver. Is that a fair summary? Judge Scudder, that's a fair summary of our fallback argument. OK, what's the primary argument? Primary argument on appeal is that the law is unsettled, that the U.S. Supreme Court in Plume Hall specifically said that the claim that the passenger had that did not make it to the U.S. Supreme Court, that that claim there, I quote, there is some disagreement among lower courts as to whether a passenger in our situation can recover under a Fourth Amendment theory. We express no view of that question. OK, so let me ask you this question. Let me ask you this. I want to change the facts ever so slightly. I want to have the exact same encounter occur behind a high school at 12 midnight on a Friday night in response to multiple reported problems and unfortunate incidents involving high school kids drinking. So been a lot of problems in a community. Kids are gathering behind the high school. There's a nice quiet spot back there, et cetera, et cetera. And so a call comes in at 12 o'clock on Friday night. The kids are gathered. Pickup trucks are back there. They're drinking away. The same exact thing happens. A radio car pulls up. Somebody sees it. The pickup truck backs up, heads towards the exit of a police officer with all the facts here. OK to deploy lethal force. Your Honor, so the only difference, the reason I'm asking that question is because one argument that's not being made here, I think for understandable reasons, is that somehow the drug, the drug deal context to this is making all the difference in the world. I'm not seeing that argument anywhere, not on your side, not on the other side. So I think, well, we may as well make it the high school drinking fact pattern. And I'll just say for my part, it troubles me greatly to think that from a distance of 30 feet or 50 feet in a scenario like that, that an officer could deploy lethal force. Your Honor, I guess I'm not understanding the distinction, but let me try to answer your question. So just change the fact pattern in one way. It's not a drug to keep everything the same. It's not a drug deal that officer Ortiz shows up to. Sure. It's high school drinking. Your Honor, if all of the facts are the same, except it's just a different context, my position would be the same. This is not a Fourth Amendment case. It's not a Fourth Amendment seizure. That does not mean that your concerns over the shooting and the implications of that are completely without recourse. But he's trying to see someone through the use of the weapon, through the use of the car, or whether he's aiming for the driver. And I think Judge Scudder's hypothetical is looking at the question whether this is an unreasonable effort at a seizure because of the fact that it's lethal force and whether the law with regard to when lethal force can be used is clearly established enough that that's fair game, even in a qualified immunity context. Your Honor, and again, I think the questions that are being posed goes to go to the reasonableness of the use of force. They go to the Graham standard. What our argument to the court is, and I think what the Supreme Court was getting at in Pluma is we don't get to that question. This is fundamentally not a Fourth Amendment claim that we evaluate the reasonableness. This could have been pledged as a 14th Amendment due process claim, certainly was pledged as a statewide measure. And that's quite fortuitous, isn't it? So you say you have a police officer that's shooting, as you put it earlier, aiming at the hands of a driver on a steering wheel. I mean, that's awfully close to a head. OK, that's and if and if the shot would have hit the driver, it would have aligned with the officer's intent and therefore there would have clearly been a seizure. But the officer missed and he hit a passenger in the head. Definitely seized the passenger, and I mean, in any fair sense of that, but but that makes all the difference in the world for Fourth Amendment purposes, because the officer actually missed his intended target. See, Judge Scudder, I don't think that's right. I don't think he seized the passenger. Number one, a seizure under Plumhoff and the Supreme Court precedent requires intent to hit that person. No, that's what I mean, because he missed his target. There was no seizure. If the driver had been shot in the head and killed. But then it's clear from Plumhoff that we have a seizure. It's clear from Broward that there's a seizure, but because the passenger was hit, the unintended. There's no sense. There's no question in a quite literal sense. The passenger was seized. He was instantly killed. That that's not necessarily true, Your Honor. We don't know that he was transported to the hospital after he received a lethal injury. I'm just going to interject and say that you've got a minute left. If you would like to save a bit for the bottle. I would like to save it for rebuttal. Thank you, Your Honor. Certainly. Mr. Cade. Yes, Your Honors. Can you hear me? Yes, thank you. I can. May it please the court. Nathaniel Cade appearing on behalf of the appellees, the state of Christopher Davis and Doritha Locke, a special administrator. This court should either dismiss this case for lack of jurisdiction or alternatively affirm the district court's denial of summary judgment for four reasons. First, as noted, this court lacks jurisdiction as the deputy Ortiz qualified immunity appeal. They attack the underlying fact that Judge Stattmuller found were disputed. Second, Ortiz violated Davis's Fourth Amendment rights by using excessive force. Third, qualified immunity does not apply because there are disputed facts. Finally, there is a dispute as to whether Ortiz created the danger and thus is not entitled to summary judgment. So can I ask you a question? This is actually a little bit for Mr. Hall, too, but suppose we had a gathering, you know, as we've been having many of this spring, summer and now soon to be fall tomorrow. And the police officers are thinking that they're going to shoot somebody in the middle of the crowd and they aim, but they happen to hit somebody else. Has that other person been seized? Judge Wood, I'm going to I know it's not appropriate sometimes in a oral argument, but I'm actually back are the people in the crowd suspects or non-suspects? They're all they're all thought to be looting. So if they're looting their suspects, then yes, in this circuit, use of deadly force on a suspect is a seizure within the Fourth Amendment and must be reasonable. Scott versus Edinburgh, as well as Ibar, which talks about gunshot into a fleeing car is a forceful seizure. And U.S. versus Griffin, a gunshot fired into a fleeing car is a forceful seizure. And is here is Mr. Davis a suspect? Yes, your honor, because at the time they went to the restaurant to do they called they were doing a takedown of the car and everyone in it. They did not know who was in the car. They did not know how many. They knew there were at least one drug dealer, Mr. Nieves, because he was communicating with the confidential informant. They had no idea whether it was one or five or more. But the plan, according to all of the officers who were there, was to do a takedown of the car and the people in it. So, yes, he was a suspect until they made a determination if they had been successful, that he wasn't involved, didn't have knowledge or they let him go. So, yes, he was a suspect. Now, does it make any difference, as Mr. Hall is urging, that when Ortiz lifted up his gun and pointed it toward the car, Ortiz said, I was really, you know, with surgical precision aiming only at the driver of the car? He doesn't say that he was only aiming at the driver of the car, Judge Wood. What he actually said was that he, as Judge Stettmiller quoted, he was intending to stop the threat. At the time that he gained acquisition and pointed, all he could see was the driver's hand. So let's think about that. If the driver is driving away and all you can see his hands because it's up, that would suggest that either the driver is the biggest idiot in the world and that's how they're going to drive. Or the first shot has occurred, which is how both Nieves and Laura both testified. Laura was the driver as well as Hackett. And the reason that Hackett is so important, Mr. Hall indicates, well, he couldn't see anything. That's perfect because now all he can hear. And I've got three citations to his deposition where he's asked, I hear shots first, then Why is that important? Because Ortiz says the car backed up violently and then squealing tires accelerated, except the officer who was closest to touch the car knocks. He already stepped out of his vehicle. He was about a foot away. He said the car had backed up. It backed up slowly one foot and then started to drive away slowly. So Ortiz is saying it was a loud noise. It backed up violently and it accelerated fast. I don't know many cars that can back up violently and only go a foot and then accelerate, except Ortiz is the only one who heard the acceleration first before firing. That's why Hackett is so important. That's a credibility issue. That's why a jury should be deciding this, not on a summary judgment and certainly not on a dispute as to qualified immunity. A jury has to determine, do we believe Laura and Nieves as well as Hackett or do we give credibility to what Ortiz says that he was under the impression his intent, his thought process means nothing. It's what does a reasonable officer in that situation. In getting back to Judge Scudder's opinion, I would agree that you use the issue of high school doing alcohol here. We have drugs and not we're not talking drug kingpins. We're talking eight ball, an eighth of an ounce of cocaine reportedly is being delivered. That's a minor offense in the scheme of things. It's not a violent crime. All of the case law that talks about Fourth Amendment seizures in the use of force. Right. They've got three things. A, they've got to determine whether the officer is at risk. That's a disputed issue, whether Ortiz is at risk. We have to determine whether another officer is at risk or the community. There's no evidence of that either. And finally, we have to consider the crime in eight ball. How is that any different than if it was alcohol or if it was someone selling, you know, whether it's just high school students, whether someone has a case of vodka and they're selling to students, maybe that's a felony. But is that something that gives the officer the right to start shooting? I would say no. Mr. Cade, why don't you address the if you can. It would help me speak about the relationship, the legal relationship between Plum versus Rickard and what the Supreme Court said in 1985 in Tennessee versus Garner in Garner. As the district court pointed out, the court said, quote, the use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. How does Plumhoff change Garner or not, in your view? I don't think Plumhoff itself changes Garner. The issue with regards to Plumhoff dealt more with a person who was also in the vehicle. That person is not was not a suspect. That person was not a criminal or anything else. The officer fired shot. We have a different situation here where Davis is a suspect until the police know otherwise, because they're doing a takedown in Plumhoff. The the passenger did not file suit, and I think the court was very clear they did not want to get to the point of dicta. They did not want to turn around and say, well, definitely she has an argument or doesn't have an argument. It's it's not before us. And all of the talk of of the Madrid Torres versus Madrid, that doesn't apply here because in this district we've at least held or you at least, I should say, that shooting of a suspect is a seizure. The issue in the Torres case, which tries to dovetail off Plumhoff, is you had a suspect who was shot and then subsequently escaped, took herself to the hospital, had extensive injuries and then subsequently was arrested. And what they are trying to determine is whether or not there has been a seizure over that. I think it was a day and a half, two day period. And Judge Sykes, if I can find the I have the citation specifically said that for seizure purposes, it's not a continuation. We don't have that here because we clearly have a seizure because he was shot. He was physically Davis was physically touched. In fact, I noted it in the appeal brief. The Justice Department even agrees with that theory that if you fire a shot at someone and you hit them, a suspect, you have seized them. Whether or not you could turn around and arrest them subsequently or whether it's been an hour or two days, they have been seized for Fourth Amendment purposes. So so you're it seems to me critical to your argument is the notion that this is all an objective test. And so it doesn't really matter what was in Officer Ortiz's mind. He took an action which objectively was capable of seizing anybody who was in the car. That is correct. That is correct. In fact, the case law in this district is we don't look at what the officer thought. We look at what a reasonable officer thought. And if, in fact, this car was dangerous, we know that we have an officer standing a foot, foot and a half away with his gun drawn who did not fire the shot. But we have Ortiz, who says he's you know, there's a discrepancy as to how far away he is. And that's important. Mr. Hall is correct that both experts opine that the car was traveling at a certain rate of speed. But in order for both of them to opine that it was traveling at that rate of speed, you have to use math. And in order to use that math, you have to have two discrete points. You have to use the point where Ortiz is standing and he's ejecting. He's firing his weapon and the bullets are ejecting and the point where the vehicle was at. Those points are not set in stone. It's not as if after the fact, the Wisconsin Department of Justice says Ortiz was definitely standing here and the vehicle was definitely there. They could be off six inches. They could be off six feet. And so mathematically, we know that the vehicle, once it left. The parking lot was traveling at a rate of speed, the speed at which it was traveling at Ortiz is in dispute. Knox, who was closest to reach out and touch it, said it was driving away slowly. No one else heard the skidding of tires. So the only one who said it was coming at a high rate of speed is Ortiz. Getting back to my point, does that take you to Johnson against Jones and just say there's too much in the way of disputed facts for this right now to be resolved on qualified immunity? Obviously, whenever Johnson against Jones applies, the best the officer can hope for is what I think of sometimes as qualified immunity light. You know, they do have to go through a good bit of the proceeding, although they certainly may prevail in the end if the facts are found in their favor. I would agree that's correct. And in fact, Judge Wood, you stated in the Weinman versus McCone case, 787 F 3rd, 444 at 446, quote, an appeal for ruling on qualifying immunity is not the time for the resolution of disputed facts. And that's what we have here. We have a resolution. I was quoting Justice Breyer because he was the one who originated that. Not me. I can't say, Judge, I don't have it right in front of me, but I made sure that I wrote that quote down. We have a dispute as to whether the vehicle was actually aimed at Ortiz. We have a dispute as to whether it accelerated first or there were shots first. We have a dispute as to whether the Ortiz fired only at Jose Lara as opposed to firing at the vehicle itself to stop the threat. We have a dispute as to where Ortiz was. Did he was he directly in front of the car or was he moving? We know he was moving because he testified to that. And we also know that he's moving because of the angles of the of the of the bullets. It's not as if he was directly in front, 90 degrees, and he reaches out and he shoots. And you could see on the windshield gun marks. The very first shot is actually at less than a 30 degree angle. It's from the side. The second shot is right by the driver's mirror in that a frame little area. The third shot blew out the driver's window. The fourth shot hit the rear driver, the passenger door, the rear door. So for Ortiz to say I had to move, that's a disputed issue because he wasn't directly head on and no one has testified yet. It was aimed directly at him other than Ortiz. At the end of the day, what I think ultimately happened here is Ortiz had tunnel vision. Ortiz knew the idea was to do a takedown. And so they were going to stop the vehicle and he was going to do it no matter what. And he's there. You get the adrenaline going and the vehicle starts moving. He starts shooting. That's all I mean, a jury is going to have to determine whether my argument is correct or not, but no one says, yep, it was going right at him. We have other cases where you have a vehicle that's only going six feet and the court has found that qualified immunity does not apply. That's the estate of Starks. And in that case, you had an officer who is behind a telephone pole, jumps out in front of the telephone pole. Here we know Ortiz says he was in one spot. He then moves and then moves again because he claims the vehicle was coming out. Only a jury can determine exactly where in the scheme or the scope was Ortiz. Mr. Cade, let me ask you this question. Mr. Judge, do you think the fairest reading of Judge Stattmuller's opinion is, I mean, if there is a qualified immunity ruling here, it is barely, barely. OK, and the reason I say that is because it comes on page 16, the first mention of qualified immunity. And in substance, what I'm reading him to say is, look, I know what qualified immunity is. I got it. It's a two part test. There's just no way if I accept the facts in the light most favorable to the plaintiff that I can confer qualified immunity. We need a jury trial here. I'm not even sure I know fully what happened. I would say that's correct. In fact, I would point you to page one second, Judge Page 10 of that opinion where he So the reason I'm asking you that and maybe Mr. Maybe this is for Mr. Hall, but, you know, there's a back and forth in the jurisdictional statements, which you'd understand in a case like this as to whether we have jurisdiction or not. But Mr. Hall, on behalf of Deputy Ortiz, describes the court's ruling in terms of the district court deciding what was clearly established as of February 2016. I don't see Judge Statmuller talking about clearly established law in any direction whatsoever. I think literally all he says about qualified immunity, unless I've read it too fast, is on page 16. And you are 100 percent. You are correct, Judge. What he said. Can I finish answering the question? My time is up. You should answer the judge's question. What he essentially is saying is based on all of this, based on all the facts, the only officer who should face a jury is Deputy Ortiz because it's not clear what occurred at 530 on February 16 in terms of what caused him to fire suit. But that he did find that a seizure had taken place and it's up to the jury to make that determination. And then he can apply based upon how the facts come in. Correct. And qualified immunity could be decided after a trial. He could take it away from the jury. That's right. All right. Thank you very much, Mr. Cade. And to further Mr. Hall. Yes, thank you, Your Honor. I just want to make sure that I'm being clear. These factual disputes that we're talking about have no bearing on the legal issue that's before the court. Judge Statmuller at page 10 said it is undisputed that Ortiz did not intentionally target Davis. That is undisputed. Under Plumhoff, Plumhoff recognized the split in the circuits that question whether or not the Fourth Amendment applies to these cases. And our position is simply in a section 1983 case under Graham versus Connor. The first step is to identify the appropriate constitutional standard to evaluate the case. The discussion about the reasonableness of what happened assumes the Fourth Amendment applies. Our position as a purely legal question is the Fourth Amendment does not apply to this case because as the court found, Ortiz did not intentionally target Davis. Finally, just to wrap up and to try to answer Judge Wood's question is related to this distinction of and I'm sorry, Your Honor, I'm out of time. Can I finish your thought? Thank you, Your Honor. The distinction between a suspect and a hostage or a bystander and whether that matters for purposes of our argument and our point with that, Your Honor, this court in Schaefer versus Spoke ruled that the Fourth Amendment did not apply to a hostage being shot. There's no there's no way to draw a distinction between a bystander, a hostage or somebody that maybe has already been seized in determining whether or not the Fourth Amendment would apply. The point being is Davis wasn't in control of the vehicle at the time Ortiz opened fire. And there's really no dispute of that either. So we don't believe there's any distinction to be drawn from the Schaefer decision. Thank you, Your Honor. All right. Thank you, Mr. Hall. Thank you, Mr. Cade. We will take the case under advisement.